# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **REID SELSETH, as Executor of the Estate of Betty Reid Selseth, deceased, as Trustee of the Betty Reid Selseth Trust, ad individually as beneficiary of the Betty Reid Selseth Trust dated March 23, 1998, and DAMON SELSETH,**<br><br>Plaintiffs,<br><br>v.<br><br>**LEO J. DARWIT, DAVID COX and WAYNE HUMMER ASSET MANAGEMENT COMPANY,**<br><br>Defendants. | No. 07 C 4943 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Reid Selseth, as Executor of the Estate of Betty Reid Selseth, deceased, as Trustee of the Betty Reid Selseth Trust, and individually as beneficiary of the Betty Reid Selseth Trust dated March 23, 1998, and Damon Selseth have filed a first amended complaint alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) & (d) and other state laws against defendants Leo J. Darwit, David Cox, and Wayne Hummer Asset Management Company ("Wayne Hummer"). Defendant Darwit has moved to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) and the remaining defendants have moved to dismiss separately pursuant to FED. R. CIV. P.

12(b)(6). For the reasons stated herein, Darwit's motion to dismiss on jurisdictional grounds is granted and the remaining motions are denied as moot.

I.

The following facts are alleged in the complaint. Betty Reid Selseth died on March 25, 1998. She was survived by the plaintiffs, her son Reid and her grandson Damon. Betty's will was admitted in probate in the Circuit Court of Cook County on July 2, 1998. The will provided that all of her assets be left to a trust. According to the terms of the trust, Reid and Damon are entitled to discretionary distributions of income and principal during Reid's lifetime for their health, maintenance, support, and education. After Reid's death, the principal and interest is to be distributed to Damon upon certain conditions. The value of the trust is alleged to be approximately ten million dollars and includes four parcels of real property, stocks, securities, and liquid assets.

Defendant Darwit was a friend and advisor to Betty. He had lived with Betty for over twenty years and was her companion and financial consultant. Betty's will appointed Reid and Darwit as co-executors and co-trustees. The Circuit Court of Cook County appointed Reid and Darwit as co-executors of the Estate on July 2, 1998 in case number 98 P 5826. The Probate Court entered an order that the Estate was to be administered as an independent, unsupervised estate.

Plaintiffs allege that Darwit has been improperly using Estate funds to pay his personal expenses. Reid alleges he initially believed that Darwit was only withdrawing money from the Estate account to cover the necessary expenses of administering the Estate. During that time period, Damon was still a minor and unaware of Darwit's actions and Reid alleges he was suffering from clinical depression, under treatment by a psychiatrist, taking medication and, as a result, also unaware of Darwit's actions.

Defendant Wayne Hummer is an Illinois corporation that managed the Estate's and Trust's liquid assets. Defendant Cox was an employee of Wayne Hummer and is alleged to have been the individual responsible for managing, investing, and safeguarding the Estate and Trust portfolio. Cox was also responsible for receiving and disbursing sums of money from the Wayne Hummer accounts. Beginning in 1999, Darwit began to request disbursements directly from Wayne Hummer. Upon receipt of Darwit's requests, Cox would review the details of the usually written requests and issue checks. In 2005, Wayne Hummer began wiring money to the Trust's account or Darwit's personal account at Oak Bank instead of writing checks. In addition to funding his personal expenses, Darwit is alleged to have secretly withdrawn nearly $400,000 in executor fees without informing Reid or Damon, or seeking approval from the Probate Court. Darwit is alleged to have misappropriated in excess of one million dollars of Estate and Trust money, mostly since the summer

of 2003.

In 2003, Reid was charged with a criminal complaint unrelated to the Estate or the Trust. Since the fall of 2003, Reid has been detained at the Metropolitan Correctional Center awaiting trial and has depended on Darwit for the management of the Estate. Reid alleges that Cox improperly complied with Darwit's requests despite knowledge that the account was established with Reid as a co-executor and co-trustee, who he failed to inform of the account activity.

In the response to the motion to dismiss, defendant Darwit has also submitted materials from the probate case. These include filings by plaintiffs to (1) object "to account and account of Leo Darwit;" (2) a response in opposition to "Darwit's petition for executor fees;" (3) a "motion to disgorge the fees of co-administrator Leo Darwit;" (4) an "emergency motion to reimburse estate [of funds transferred by Darwit];" and (5) a "motion to remove co-administrator Leo Darwit." In May 2007, after all of these motions were filed, Reid, Damon, and Darwit entered into a partial settlement agreement whereby Darwit resigned as co-executor and co-trustee and withdrew his own petition to remove Reid as co-executor and co-trustee. As part of the partial settlement agreement, plaintiffs and defendant Darwit agreed to attempt to mediate any remaining issues in the probate court. The Circuit Court granted a motion to transfer the probate case to Calendar 14

for voluntary mediation. Plaintiffs concede that Darwit's petition for executor fees and Damon's motion to disgorge Darwit's fees are currently pending in probate court. (Pl. Resp. Br. at 2-3.) One week prior to the court supervised mediation, the present complaint was filed.

## II.

In assessing defendants' motions to dismiss under FED. R. CIV. P. 12(b)(1), I must accept all well-pleaded facts in the complaint as true. *St. Johns United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007). I must view the allegations in the light most favorable to plaintiffs. *Id*. In order to determine if there is subject matter jurisdiction, I "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id*. (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).

## III.

Defendant Darwit has moved to dismiss the complaint on jurisdictional grounds. It is undisputed that Betty's will was admitted into probate in the Cook County Circuit Court and that currently pending before the probate court are a motion for executor fees by defendant Darwit and a motion to disgorge Darwit's fees by Damon. The probate proceeding is unquestionably an *in rem* proceeding. Based on those facts, Darwit argues there is no

5

subject matter jurisdiction over plaintiffs' RICO claim under the doctrine of prior exclusive jurisdiction as well as the probate exception to federal court jurisdiction.

Under the doctrine of prior exclusive jurisdiction "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Penn. Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 195 (1935). In turn, the probate exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006); *see also Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006) (the probate exception applies to both diversity and federal question cases). As set forth in *Marshall*, these two principles appear to merge for purposes of this case. 547 U.S. 311 (citing *Penn. Gen. Cas.*, 294 U.S. at 195-96) ("In short, we comprehend the 'interference' language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*.") (further citations omitted).[1]

---

[1]"*In rem* jurisdiction enables the court to determine the status of, interest in, or title to property itself," meanwhile "[a] quasi in rem judgment affects only the interest in designated property of known persons who are parties to the proceedings." Jack H. Friedenthal, Mary K. Kane, Arthur R. Miller, *Civil*

Plaintiffs premise their RICO claims on the allegation that the Estate is the "enterprise" under § 1961. (Compl. at ¶ 33.) *See Jennings*, 495 F.3d at 472 (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 481 (1985)) (in order to state a claim under § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."); *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999) (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998)) (to state a claim for conspiracy under § 1962(d), a plaintiff must allege: "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." ). Therefore, the Estate - the *res* in the probate case - is at heart of plaintiffs' claims under §§ 1962(c) & (d).

Plaintiffs' RICO claim falls within the probate exception. Specifically, a resolution of the RICO action hinges on the determination of whether Darwit acted properly with respect to his administration of the Estate during his tenure as co-trustee and co-executor. If plaintiffs succeed on this claim, it would necessarily interfere with the administration of the estate by the probate court, particularly in light of the pending motions. There

---

*Procedure* § 3.8 at 116, 118 (4th ed. 2005).

could arguably be contradictory findings in the different forums on the question of whether Darwit acted properly (and is therefore entitled to his fees). Moreover, a finding in this court in favor of plaintiffs would have the effect of rendering the settlement agreement in the underlying probate case meaningless and re-litigating the issues that were originally brought by plaintiffs before the probate court with respect to Darwit's accounting and reimbursement of estate funds. Plaintiffs cannot simply re-title their claims from probate court against Darwit as RICO claims in order to seek relief in a different forum.[2] *See Cassity v. Pitts*, 995 F.2d 1009, 1011-12 (10th Cir. 1993) (RICO claims were barred when they required the court "to construe the trust and define the duties, obligations and responsibilities of [t]rustees"); *Wozniak v. Corrigan*, No. 1:05 CV 2259, 2006 WL 4512815, at *4 (N.D. Ohio May 12, 2006) ("Recasting the language of the [probate] suit as a

---

[2]Moreover, by alleging the Estate is the enterprise, plaintiffs could invoke the RICO remedial provisions to place management of the estate directly within the jurisdiction of this court, which would be improper. The civil remedies provision of RICO provides that
> [t]he district courts of the United States *shall have jurisdiction* to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: *ordering any person to divest himself of any interest, direct or indirect, in any enterprise*; . . . or *order the dissolution or reorganization of any enterprise*, making due provision for the rights of innocent persons.

§ 1964(a) (emphasis added). Plaintiffs' allegation that the Estate is the enterprise make this suit most akin to a *quasi in rem* proceeding.

RICO claim does not alter the landscape of the case which implores the Court to interfere with a state probate proceeding."); *cf. Jones v. Brennan,* 465 F.3d 304, 308 (7th Cir. 2006) ("It is too facile a litigation move to recast a claim of maladministration [of an estate] as a denial of due process."). Accordingly, I lack jurisdiction over plaintiffs' federal claim and decline to exercise supplemental jurisdiction over their remaining state law claims. This holding applies equally to the claims against the remaining defendants, for the propriety of their actions depends on a determination of the legitimacy of Darwit's conduct.

IV.

For the reasons stated herein, defendant Darwit's motion to dismiss for lack of subject matter jurisdiction is granted. The remaining defendants' motions to dismiss are denied as moot.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: February 21, 2008